## FITITE CEDAR SHAKE CO. et al. v. C. B. SHINGLE CO. et al.

### No. 8465.

Circuit Court of Appeals, Ninth Circuit.

Sept. 23, 1938.

Richard J. Cook, of Seattle, Wash., for appellants.

Theodore J. Geisler, of Portland, Or., for appellees.

Before WILBUR, DENMAN, and HEALY, Circuit Judges.

WILBUR, Circuit Judge.

This is an appeal from a final decree of the District Court holding claims 1, 3 and 8 of Patent No. 1,820,445, claim 2 of Patent No. 1,634,789, and process claim of Patent

No. 1,764,412, not infringed and dismissing the bill of complaint.

Infringement of Patent No. 1,820,445.

Patent No. 1,820,445 was granted Kenneth Dale Craft August 25, 1931 on an application filed February 11, 1925, and is for a combination in a machine adapted to manufacture imitation shake shingles from ordinary shingles. The idea of making imitation shake shingles from ordinary shingles was not conceived by Craft but by Charles E. Putman who obtained patent No. 1,577,-150 for an imitation shake shingle. That patent was declared invalid by this court in Putman v. Beaver State Shingle Co., 46 F.2d 353, where it was held that the mere imitation of a well known article was not patentable unless there was novelty in the means by which the imitation was carried out.

Craft's patented machine transforms an ordinary shingle into a shake shingle by grooving it three-fourths of its length from its butt. When laid, the grooved or corrugated part of the treated shingle is designed to be exposed to view, the ungrooved part is unexposed, and insures a tight windproof fit. The cutting or grooving device of the patented machine is therein described as "a gang of saw blades disposed in inclined directions with respect to the arbor axis." The saws are placed in the machine beneath a table over which the shingle to be machined passes, and when in cutting position protrude through and above an opening in the table. The shingles to be treated are carried along the table towards the cutting edges of the saws by endless chains. Cams are located on wheels which carry the feed chain and which rotate on a shaft. Connected with the shaft are legs which support the table. As the shaft rotates, the cams contact with rollers which raises the shaft and thus alternately elevates and lowers the table. As the point ends of the shingles reach the openings in the table where the cutting edges of the saws protrude, the table is raised by the cams above the protruding saw blades so that the point ends of the shingles are not grooved by the saws. As the shingles progress along the table the cams turn and the table is lowered so that the saws protrude above the table and cut into the shingles to form grooves therein, while the shingles are held against the table and against the cutting edges of the saws by a presser roller.

A machine for planing a smooth surface on both sides of shingles, similar in operation to the Craft machine disclosed in a patent granted E. H. Kruger on December 11, 1894, No. 530,695, is cited as anticipatory. In the machine disclosed by the Kruger patent, shingles are carried along a table or bed by sprocket chains toward two planing tools each designed to surface one side of a shingle. One planer is located above the table and another below it. The table is attached to transverse shafts, the ends of which are placed in rotating eccentric disks. The machine is so adjusted that as the points of the shingles approach the planer knife located above the table the eccentric disks cause the end of the table to rise so that the upper surface of the shingles will be horizontal and be planed uniformly throughout the taper. The shingles are held in position for cutting by presser bars which are equivalent in purpose and effect to the roller pressers of the Craft machine. In order to manufacture shake shingles from ordinary shingles with the Kruger machine the eccentric disks could be adjusted so that the upper planer knife would remove only the exposed portion of the face of the shingle, and a profiled knife (one with teeth in it) substituted for a straight-edged one. It is thus apparent that the Craft machine closely approaches the shingle planing machine disclosed by the Kruger patent and, aside from the cutting element, is substantially equivalent in every other respect.

In the prosecution of the Craft application in the patent office the examiner first allowed only a combination claim, including the battery of saws, as the cutting means. Upon further consideration of the application the examiner allowed other claims calling for the arrangement of the inclined saws in slightly nonparallel relation in order to produce greater nonuniformity in the depths of the grooves in the shingle to conform more nearly to the appearance of a split shake. The examiner stated:

"Claims 18, 19 and 20 state the solution of the problem which applicant reached and may be allowed. Although saws as has been shown (see Lerch, or Consoli) are a known grooving means, and the inclining of saw to widen and even to merge the cuts, is old, see Smith or Burkhardt and spacing of saws to space the grooves is also old in Consoli, the examiner believes that the varying inclinations of the saws to reproduce the irregular effect of the natural split surface, involved invention, and such varying inclination is a part of the original disclosure. * * *"

Upon an appeal by Craft to the Board of Appeals, United States Patent Office, the Board allowed, besides other claims, a broader claim (claim 2 of the patent as issued) which, for the cutting element of the combination, specified "grooving means". The examiner had rejected this broader claim on the ground that the selection or arrangment of edges of a revolving planing tool so as to groove or cut designs in the lumber was within the skill of the mechanic and that the substitution of grooving cutters to be alternately raised from and lowered into a cutting position similar to those disclosed in a patent granted to Lerch July 6, 1879, No. 585,886, was obvious. In reversing the examiner and in allowing this claim the Board said:

"Claim 14 [claim two of the patent as issued] is drawn along the same line as claim 2 in the Melby patent. It includes grooving means, and is thus limited to a grooving machine. We believe that this claim is patentable. The reorganization of the Kruger patent as suggested by the examiner to meet the claim is believed to require more than mechanical skill."

After the decision of the Board allowing claim 2 of the patent as issued appellants amended claims 13, 15, and 21 of the patent application (claims 1, 3 and 8 of the patent as issued), which had been rejected by the examiner, by inserting the word "grooving" in describing the cutting means of the machine. These claims were allowed, as amended, and are the claims sued upon.

In view of Kruger's machine to construct the Craft machine by substituting a patterned knife which was old in the art for a straight-edged one would not constitute invention. Such a construction would suggest itself to any skilled mechanic seeking to construct a machine capable of manufacturing imitation shake shingles. Consequently, if the patented machine of Craft shows invention over Kruger it is only in the selection of a gang of saws arranged as the cutting element of the machine. Indeed, Craft, the patentee, himself testified:

"I would say those saws were my invention. That is the only way that I had found up to that time of producing the effect I wanted. I had never been successful in making any cutter head with grooved knives or pattern knives that would work satisfactorily. When I filed my application for a patent, it was on the idea of using a battery of cutters, or saws that are used as cutters;

these saws don't act as saws, they act as cutters but if you mean a battery of circular saws put on an arbor at that angle, that is what I applied for."

Despite the testimony of Craft that he had been unsuccessful in his experiments with grooved or patterned knives, it appears from the evidence that the cutting device in the appellees' alleged infringing machine is an ordinary knife grooved or patterned and that the use of pattern knives for grooving was old in the art. The Craft invention, if any, falls within the principle stated by the Supreme Court in Eibel Process Co. v. Paper Co., 261 U.S. 45, 63, 43 S.Ct. 322, 328, 67 L.Ed. 523, as follows:

"If what he [the inventor] has done works only a slight step forward, and that which he says is a discovery is on the border line between mere mechanical change and real invention, then his patent, if sustained, will be given a narrow scope, and infringment will be found only in approximate copies of the new device."

We conclude that the claims of the Craft patent in suit, which specify "grooving means" as an element of the combination, cannot be construed to cover the grooved knife used by appellees in their machine, and that the combination described in the patent is anticipated by Kruger, unless limited to the gang of saws above described; consequently, that the trial court correctly held that appellees do not infringe the claims in suit.

Infringement of Patent No. 1,634,789.

Patent No. 1,634,789 was granted Charles J. Melby July 5, 1927 on an application filed June 9, 1926 which was subsequent to the filing of the application for the Craft patent in suit. Claim 2 of this patent is as follows:

"In a shingle-planing machine, a cutter-head, a planer knife therefor, said planer knife being grooved upon its outer side with respect to the cutter-head, shingle feeding means, means to elevate the point end of a shingle out of cutting relation with said planer knife, and means acting subsequently to the aforesaid means to regulate the shingle to have its under-surface grooved by the planer knife."

The machine disclosed by this patent purports to be an improvement over the Craft machine. The basis of the allowance of the claim over Craft is the particular form of cutting device which has grooves

running at right angles from the cutting edge of the knife along the outer or back side of the knife. The cutting device used in appellees' machine is not grooved upon its outer side but is an ordinary cutter blade with deep notches. From what we have said in regard to the Craft patent it is clear that patent No. 1,634,789 cannot be given a construction that would cover the cutting device used by appellees. We agree with the trial court that appellees do not infringe this claim.

Infringement of Patent No. 1,764,412.

This patent was granted Melby June 17, 1930 on an application filed July 21, 1926. The claim of the patent is as follows:

"The process of manufacturing an imitation shake shingle which consists in passing the sawed shingle against a planing tool whereby its top surface is formed with a plurality of longitudinally extending, parallel, smoothly cut grooves of irregular depth and width and contiguous to each other."

The process claimed is one for grooving the shingle its entire length. This is made clear from the specifications where it is stated:

"Another object of the invention is to produce a shingle so constructed that air may penetrate between the grooved surface and the back of the superposed shingle, so as to facilitate the drying out of the shingle uniformly, thus preventing warping and decay."

And referring to the drawing it is stated:

"1 designates a shingle formed in accordance with the present invention, in which the top surface which is exposed to the weather is formed in a plurality of parallel, longitudinally extending grooves of irregular depth and width and which extend the full length of the shingle."

The patentee further states:

"I am aware that many attempts have been made to secure a split shingle effect by means of a plurality of saws, by a combination of splitting and sawing, etc., but no shingle has yet been produced that presents a smoothly channelled surface throughout its surface as this shingle."

It is thus clear that the invention and novelty, if any, in this patent lies in the grooving of a shingle its entire length. As the appellees do not groove their shingle its full length they do not infringe this patent.

No other points raised by appellants require consideration.

Decree affirmed.